# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Nancy K. Boehme | Jane Sutton |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** Plaintiff's Motion for Class Certification (filed 03/17/09)

     The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling, hereby DENIES Plaintiff's Motion and rules in accordance with the tentative ruling as follows:

     Plaintiff Nam Nguyen ("Nguyen") seeks class certification under Federal Rule of Civil Procedure 23. Defendant BDO Seidman, LLP ("BDO") opposes. The motion is DENIED.

## I.  Background

     Nguyen alleges, individually and on behalf of a proposed class, that BDO has a uniform and unvarying policy and practice of treating all proposed class members as exempt from California wage and hour laws. Nguyen seeks certification of the following class:

> All persons employed by BDO Seidman, LLP in California, from November 15, 2003 until the time when class notice may be given, who: (1) assisted certified public accountants in the practice of public accountancy, as provided for in California Business and Professions Code sections 5051 and 5053, (2) worked as associates or senior associates in the assurance or tax lines of service, (3) were not licensed by the State of California as certified public accountants during some or all of this time period, and (4) were classified as exempt employees.

(Compl. ¶ 16.)[1] The Complaint alleges that BDO is violating California law by failing to pay overtime, to provide meal periods and rest breaks, to provide accurate itemized statements, and to pay wages due when a proposed class member is discharged or resigns.

II.   Legal Standard

A motion for class certification involves a two-part analysis. First, Nguyen must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative party must be typical of the claims or defenses of absent class members; and (4) the representative party must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Second, the proposed class must meet the requirements of at least one of the subsections of Rule 23(b). Here, Nguyen contends that the class qualifies under Rule 23(b)(3), under which a class may be maintained where common questions of law and fact predominate over questions affecting individual members, and where a class action is a superior method of adjudication. Fed. R. Civ. P. 23(b)(3).

Nguyen must offer facts sufficient to satisfy the requirements of Rule 23(a) and (b). Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977). In turn, this Court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). While the Court's analysis must be rigorous, Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001).

---

[1] The Court relies on the class definition included in the Complaint insofar as that definition differs from the one in the moving papers. Ortiz v. McNeil-PPC, Inc., Nos. 07cv678-MMA(CAB), 08cv536-MMA(CAB), 2009 WL 1322962, at *2 (S.D. Cal. May 8, 2009); Stuart v. Radioshack Corp., No. C-07-4499 EMC, 2009 WL 281941, at *2 (N.D. Cal. Feb. 5, 2009); Berlowitz v. Nob Hill Masonic Mgmt., Inc., No. C-96-01241 MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996). In any event, any such discrepancies are negligible. (Compare Compl. ¶ 16, with Mot. Br. 1.)

In Falcon, the Supreme Court reiterated the well-recognized precept that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Falcon, 457 U.S. at 160 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978)). Nevertheless, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

III.   Discussion

Nguyen seeks certification under Rule 23(b)(3). "'Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Committee notes). A class may be certified under this subdivision where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means to adjudicate the controversy.

Because the Court finds the analysis under Rule 23(b)(3) dispositive, it does not address the prerequisites of Rule 23(a).[2]

    A.   Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted). The Court must rest its examination on the legal or factual questions of the individual class members. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998). "To determine whether common issues predominate, this Court must first examine the substantive issues raised by [Nguyen] and second inquire into the proof relevant to each issue." Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 251 (C.D. Cal. 2006) (citation omitted).

---

[2] It would appear, however, that the requirements of Rule 23(a) could be met here.

Here, Nguyen alleges violations of various provisions of the California Labor Code,[3] as well as California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 et seq. Because these claims are only available to those putative class members who are found to be nonexempt,[4] and because the issue of exemption is not subject to common proof in this case, as set forth below, Nguyen cannot show that common issues predominate.

Thus, the threshold issue is exemption. There is no dispute that California wage and hour laws do "not apply to persons employed in administrative, executive, or professional capacities." Cal. Code Regs. tit. 8, § 11040(1)(A).[5] Nguyen contends that "[t]he question of whether BDO has misclassified all of its unlicensed associates as exempt employees is a common and predominating question that justifies class treatment." (Mot. Br. 2.) The Court disagrees. Because Nguyen does not address the executive exemption in the moving papers, the Court limits its discussion to the administrative and professional exemptions.[6]

At the outset, before addressing these two exemptions, the Court notes that Nguyen mistakenly contends that "if just one element of each exemption can be adjudicated through common evidence on a class wide basis, the court should certify the class." (Mot. Br. 2, emphasis in original; see also id. at 21.) Notably, Nguyen offers no case law

---

[3] Cal. Labor Code §§ 510 & 1194 (failure to pay overtime); id. §§ 512 & 226.7 (failure to provide meal periods and rest breaks); id. §§ 226 & 1174 (failure to provide accurate itemized statements); id. § 203 (waiting time penalties).

[4] See Cal. Code Regs. tit. 8, § 11040(1)(A) (California wage and hour laws shall not apply to exempt employees). Further, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8, § 13520. Finally, the UCL claim "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action." Krantz v. BT Visual Images, L.L.C., 89 Cal. App. 4th 164, 178 (2001).

[5] This provision is also referred to as Wage Order 4-2001(1)(A).

[6] BDO also so limits its discussion, without waiving its right to assert the applicability of the executive exemption. (Opp'n Br. 14 n.7.) Nguyen later challenges the applicability of this exemption (Reply Br. 11), but the Court declines to pass on the issue at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

to support this proposition, which runs counter to the predominance inquiry itself[7]: The question is not whether the putative class has at least one issue in common, but whether common "questions of law or fact . . . predominate over any questions affecting only individual members."[8] Fed. R. Civ. P. 23(b)(3) (emphasis supplied). A number of courts have therefore denied class certification in misclassification cases where an inquiry into each employee's duties and responsibilities was required to determine the applicability of California exemptions. See, e.g., Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 251 (C.D. Cal. 2006) ("[T]o determine which employees are entitled to overtime because of improper classification is an 'individual, fact-specific analysis' of each general manager's performance of the managerial and non-managerial tasks."); Sepulveda v. Wal-Mart Stores, Inc., 237 F.R.D. 229, 249 (C.D. Cal. 2006), rev'd in part on other grounds, 275 Fed. Appx. 672 (9th Cir. 2008) ("[I]ndividual questions predominate over common issues. . . . By far the bulk of the evidence would pertain to individualized questions, including the work performed by each individual [assistant manager].").

The Court finds Nguyen's reliance on Tierno v. Rite Aid Corp., No. C 05-02520 TEH, 2006 WL 253056 (N.D. Cal. Aug. 31, 2006), and Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005), unpersuasive. Nguyen relies on these authorities for the proposition that class certification should necessarily be granted where an employer treated all employees in a particular job title or category as exempt. (Mot. Br.

---

[7] In the Reply, Nguyen does cite Wiegele v. Fedex Ground Package Sys., Inc., No. 06cv1330, 2008 WL 410691 (S.D. Cal. Feb. 12, 2008), as "survey[ing] and rel[ying] on a large number of California cases where district courts have found that misclassification [cases] should be certified under Rule 23(b)(3)." (Reply Br. 1.) But such reliance is misplaced insofar as Wiegele relies on cases like Tierno, infra, and Wang, infra, where common questions were found to predominate largely because of standardized practices enforced from a central authority. 2008 WL 410691, at *7-11. The Court also rejects as flawed Wiegele's reliance on the Wang rationale that an employer's common classification alone is dispositive in a predominance inquiry. Id. at *9. The compelling factor here, as set forth below, is that this case is more analogous to cases like Jimenez, rather than Tierno and Wang.

[8] Nguyen cites Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 490 (E.D. Cal. 2006), for the proposition that, "[w]here a central common defense may bar each of plaintiff's claims, class action treatment is particularly apt." But, as the Romero court explains, "[t]his is because if the defense succeeds, the entire litigation is disposed of." Id. (internal quotations marks and brackets omitted). Here, the administrative and professional exemptions are common defenses, but their resolution turns on individual questions, as set forth below, such that these defenses may succeed as to some employees but not as to others. Thus, the rationale in Romero does not apply here.

22-23.) While the Court acknowledges that these cases have some force, and agrees that an employer's attempt to assert individual questions may seem disingenuous in some cases where the employer had a policy of classifying all relevant employees as exempt, this policy alone cannot be dispositive, particularly where the employer may have erred in treating all relevant employees as exempt in the first instance.

By Nguyen's logic, as BDO points out, "an employer need only use the same job title for more than one employee to guarantee that a plaintiff could certify a class." (Opp'n Br. 13.) Indeed, this was not the logic endorsed by Tierno, where common questions of law and fact were found to predominate in large part because of the presence of standardized practices enforced from a central authority. And, to the extent this logic was embraced by Wang,[9] the Court finds Wang in conflict with other, subsequent authority. See Jimenez, 238 F.R.D. at 251-52 (finding no predominance because the question of how much time employees spent on exempt work, and their amount of discretion, required an "individual, fact-specific analysis"); see also Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637, 642 (S.D. Cal. 2007) ("The principal factor in determining whether common issues of fact predominate is whether the uniform classification, right or wrong, eases the burden of the individual inquiry."); Morisky v. Pub. Serv. Elec. and Gas Co., 111 F. Supp. 2d 493, 500 (D.N.J. 2000) ("[T]he question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities."). Moreover, as set forth below, this case is more analogous to Jimenez and other related cases, where no standardized procedures had been put in place, thereby undermining the claim that common questions predominated.

In his Reply, Nguyen relies on Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586 (E.D. Cal. 2008), and Campbell v. PricewaterhouseCoopers, LLP, 602 F. Supp. 2d 1163 (E.D. Cal. 2009). According to Nguyen, "[t]he Campbell certification and summary judgment orders provide a concrete demonstration of how the misclassification question for unlicensed associates can be fairly and efficiently litigated by means of common proof." (Reply Br. 1.) Nguyen contends that "[t]his case is no different and is equally deserving of class treatment." (Id.) The Court disagrees.

---

[9] However, the court in Wang did stress the possibility of "centralized oversight and supervision" as a factor weighing in favor of predominance. 231 F.R.D. at 613 (emphasis supplied).

In <u>Campbell</u>, the court granted in part the plaintiffs' motion for class certification, certifying a class of individuals who worked as unlicensed associates in PricewaterhouseCoopers's ("PwC's") attest division during the class period and were classified as exempt employees. 253 F.R.D. at 605-06. PwC had three lines of service: assurance, tax, and advisory. Plaintiffs initially had sought to certify a class that would encompass two of these service lines, assurance and tax, along with a class of employees with both associate and senior associate job titles. But the court declined to certify a class outside the attest division of the assurance line of service. Based on the record, the court found "significant differences in the work performed between divisions and between lines of service." <u>Id.</u> at 604. The court noted that plaintiffs had submitted virtually no evidence of the job duties performed by employees outside their own division, whereas defendant's evidence indicated that job duties varied across division and line of service, and also varied between associates and senior associates. Because of these differences in job duties, the <u>Campbell</u> court found that plaintiffs had failed to show that a common question of law or fact predominated under Rule 23(b)(3). <u>Id.</u> at 596.

While the class certification issue here is similar to the one in <u>Campbell</u> in many respects – not the least of which is that Nguyen, a former employee in BDO's tax line of service, seeks to certify a class of associates and senior associates in the assurance and tax lines of service – there are several important distinctions that counsel against class certification in this case. Indeed, insofar as there are similarities between these cases, <u>Campbell</u> weighs against certifying the proposed class, which includes assurance-line employees. BDO's evidence indicates that job duties vary across the assurance and tax lines of service (CJ Dep. 12, 55-56.),[10] and that Nguyen was never permanently employed in the assurance line. Thus, even if the Court were inclined to grant certification, the class should be limited, at a minimum, to the tax line of service.[11]

---

[10] "CJ Dep." refers to the Deposition of Cindy Jeanne Janikowski. For excerpts from Janikowski's deposition, see Exhibit 1 to BDO's "Compendium of Deposition Testimony."

[11] Despite a brief, three-week rotation in BDO's assurance line of service, Nguyen was never permanently employed there. Notably, Nguyen does not know what assurance employees do; nor could he identify a single person in BDO's assurance division by name. (Nguyen Dep. 184-85.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

Moreover, unlike in Campbell, BDO's evidence indicates not only that job duties varied between associates and senior associates, but also that these duties varied even among associates of the same division and service line. (See, e.g., CJ Dep. 42, 51-52.) Nguyen not only submitted virtually no evidence of the job duties performed by employees outside his division, but the record also shows he did not know what other tax associates and seniors in his own office do. (Nguyen Dep. 73, 185, 189-90.)[12] Nguyen was not even aware that associates and seniors in his office did tax provision work (id. 73; CJ Dep. 51-52), and, despite his belief that all such employees do tax returns, the record shows that other putative class members within the tax group spend no time whatsoever preparing tax returns (See, e.g., Dexheimer Decl. ¶ 2).[13] To the extent this Court is presented with evidence that job duties vary widely even within the same division and service line, other examples of which are cited below, the record in this case is distinguishable from that in Campbell. By extending the reasoning in Campbell, this Court is therefore persuaded that seemingly "significant differences between the work performed" by tax employees at BDO preclude class certification.[14] Campbell, 253 F.R.D. at 604.

With this background, the Court now turns to the question of whether the applicability of the administrative and professional exemptions is subject to common proof.

### 1. Administrative Exemption

The Court first considers the applicability of the administrative exemption.

---

[12] For excerpts from Nguyen's deposition, see Exhibit 2 to the compendium.

[13] For declarations, see the exhibits attached to BDO's "Compendium of Declarations." Along with Dexheimer's declaration, BDO also cites paragraph 4 of Huynh's declaration. But no such declaration appears in the compendium.

[14] As in Campbell, the Court notes that "whether the[se] differences . . . are material is a difficult issue, and not without uncertainty." 253 F.R.D. at 604. But these differences have the potential to be material under the administrative and professional exemptions, as set forth below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

An employee is considered administratively exempt under California wage and hour laws when he (a) performs non-manual work directly related to management policies or general business operations; (b) customarily and regularly exercises discretion and independent judgment; (c) regularly assists an employee employed in a bona fide executive or administrative capacity; (d) works along specialized or technical lines requiring special training, experience, or knowledge; (e) executes under only general supervision special assignments and tasks; (f) is primarily engaged in duties that meet the test of exemption; and (g) earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. Cal. Code Regs. tit. 8, § 11040(1)(A)(2).

BDO contends that the applicability of this exemption requires individualized questions as to disputed elements. The Court agrees.

*Performs non-manual work directly related to management policies or general business operations.* BDO cites Ho v. Ernst & Young LLP ("Ho I"), No. C 05-04867 JF, 2008 WL 619029 (N.D. Cal. Mar. 4, 2008),[15] which held that a tax associate who researched, reviewed, and analyzed tax issues, and who translated "complex tax issues into plain English for clients[,] . . . was engaged in duties that are 'directly related' to 'management policies' or 'general business operations.'" 2008 WL 619029, at *3. As in Ho I, some putative class members in this case develop recommendations for high-level, expert tax advise. (Seddigh Decl. ¶¶ 4-7; Kelfer Decl. ¶ 4; Dexheimer Decl. ¶¶ 3-7.) Others do provision work for clients' SEC filings. (McChesney Decl. ¶ 4; Zhong Decl. ¶ 7; Ma Decl. ¶ 8.) Still others audit clients' books and internal processes, and develop recommendations. (Stetler Decl. ¶ 3; Cox Decl. ¶ 4; Wong Decl. ¶ 6.)[16]

---

[15] Significantly, the record in Ho I indicates that the plaintiff was an unlicensed tax employee in an "above entry-level position [that] requires the employee to review and analyze client data, identify and research tax issues arising from client situations, conduct legal research and analysis, respond to client questions, and develop client relationships." Ho I, 2008 WL 619029, at *1. His starting salary was $75,000, with a bonus of $10,000. Id. The Court found that he met all the requirements of the administrative exemption. Id. at *5.

[16] Nguyen selectively cites Bell v. Farmers Insurance Exchange, 87 Cal. App. 4th 805, 828 (2001), for the proposition that, where employees are "expected to bring information to the attention of supervisors, who would instruct them what to do," they are not, "as a matter of law, . . . employed in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

*Customarily and regularly exercises discretion and independent judgment.* Discretion and independent judgment involve "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a); see Cal. Code Regs. tit. 8, § 11040(1)(A)(2)(f) (incorporating by reference 29 C.F.R. §§ 541.201-205, 541.207-208, 541.210, and 541.215). This "'does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review.'" Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 375 (7th Cir. 2005) (quoting 29 C.F.R. § 541.207(e)). "'The fact that an employee's decisions may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.'" Palacio v. Progressive Ins. Co., 244 F. Supp. 2d 1040, 1048 (C.D. Cal. 2002) (quoting 29 C.F.R. § 541.207(e)). Even Nguyen's own expert conceded this point. (Ueltzen Dep. 174; see also id. 99-100 (unlicensed professional can and do exercise some discretion in performance of their work).) [17] Here, putative class members are expected to evaluate "grey areas" when preparing tax returns (CJ Dep. 67-68; McChesney Decl. ¶ 8; Fong Decl. ¶ 8; Wong Decl. ¶ 5), use their judgment and discretion when researching and analyzing tax issues for clients (Seddigh Decl. ¶ 4; Dexheimer Decl. ¶ 3; Low Decl. ¶ 3; Cox Decl. ¶ 6; Stetler Decl. ¶ 4), and assume additional responsibility based on a number of factors (Dick Decl. ¶ 5; Clemente Decl. ¶ 5). Even Nguyen admitted that being a "good decision maker" was a necessary qualification for his job. (Nguyen Dep. 128-29.)

*Regularly assists an employee employed in a bona fide executive or administrative capacity.* Here, Nguyen seeks to certify a class of BDO employees who "assisted certified public accountants in the practice of public accountancy." There is no dispute

---

'administrative capacities.'" (Reply Br. 9.) But the court in Bell declined to apply the administrative exemption in large part because, "[o]n matters of relatively greater importance, [plaintiffs were] engaged only in conveying information to their supervisors – again primarily a 'routine and unimportant' role." Id. By contrast, the record here indicates that at least some tax associates and seniors were engaged in more significant work, as referenced above.

[17] For excerpts from Ueltzen's deposition, see Exhibits 3 and 4 to the "Compendium of Deposition Testimony."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

that these certified public accountants are bona fide executive or administrative employees. Even if Nguyen disputed this fact, any resolution of this issue would require an individualized inquiry. And further individual inquiry would be required to determine the extent to which putative class members regularly and directly assisted those executive and administrative employees.

*Works along specialized or technical lines requiring special training, experience, or knowledge*. There is no dispute as to this element.

*Executes under only general supervision special assignments and tasks*. In Ho v. Ernst & Young LLP ("Ho II"), No. C 05-4867 JF (HRL), 2009 WL 111729, at *5 (N.D. Cal. Jan. 15, 2009),[18] the same court that had previously held that supervision did not preclude an employee from qualifying for the administrative exemption, Ho I, 2008 WL 619029, at *4, later found a triable issue, inter alia, as to "the amount of supervision given" to a particular associate. According to BDO, "[t]he fact that the same court found that two tax professionals employed by the same public accounting firm could be subject to varying levels of supervision that potentially affected their exempt status, plainly illustrates the need for an individual inquiry as to the level of supervision over each putative class member." (Opp'n Br. 17, also citing Ueltzen Dep. 134-35.)[19] The Court agrees. Here, BDO offers evidence that the amount of supervision given to putative class members in this case varies widely depending on factors such as the particular engagement, the partner or manager in charge, and the individual employee's capabilities. (Nguyen Dep. 82-85; Zong Decl. ¶ 4; Barry Decl. ¶ 8; Clemente Decl. ¶ 6; Dexheimer Decl. ¶ 8.)

---

[18] The plaintiff in Ho II was also an unlicensed employee, and "primarily assist[ed] in performing audits of financial statements [and] provid[ed] other assurance services that include[d]: reviews, compilations, special reports, SEC compliance, debt compliance, comfort letters, reviews of interim data, internal control reviews, and regulatory and other compliance reporting." 2009 WL 111729, at *1. Her starting salary was above $40,000. Id. The Court found that there were genuine issues as to whether she met the requirements of the administrative exemption, and denied summary judgment on this ground. Id. at *6.

[19] Significantly, Nguyen's expert conceded that the supervision determination under 5053 "really does come down to a fact-and-circumstances analysis."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

*Primarily engaged in duties that meet the test of exemption.* According to the Division of Labor Standards Enforcement Policies and Interpretations Manual (the "DLSE Manual"), the term "primarily engaged in" means that more than one half of the employee's work time must be spent engaged in exempt work. (Opp'n Br., Ex. J, DLSE Manual 51.5, ISA.)[20] Here, putative class members' time was allocated differently depending on many factors, including the client or engagement; their training, education, and expertise; and the amount of supervision they received. (McChesney Decl. ¶ 6; Seddigh Decl. ¶¶ 4-7; Kelfer Decl. ¶ 4; Zhong Decl. ¶¶ 5-7; Ma Decl. ¶ 10; Fong Decl. ¶ 11; Clemente Decl. ¶ 4; Low Decl. ¶¶ 3, 8.)

*Earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.* There is no dispute as to this element.

Accordingly, common issues do not predominate over individual questions as to the disputed elements above.

2. Professional Exemption

There is likewise no predominance of common issues with respect to the professional exemption, which, in pertinent part, applies to employees:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

---

[20] The Court may rely on the DLSE Manual as persuasive authority. See Morillion v. Royal Packing Co., 22 Cal. 4th 575, 584 (2000).

> (I) Work requiring <u>knowledge</u> <u>of</u> <u>an</u> <u>advanced</u> <u>type</u> <u>in</u> <u>a</u> <u>field</u> or science <u>or</u> <u>learning</u> <u>customarily</u> <u>acquired</u> <u>by</u> <u>a</u> <u>prolonged</u> <u>course</u> <u>of</u> <u>specialized</u> <u>intellectual</u> <u>instruction</u> and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work . . . .

Cal. Code Regs. tit. 8, § 11040(1)(A)(3) (emphases supplied).[21]  Additionally, the employee must "customarily and regularly exercises <u>discretion</u> <u>and</u> <u>independent</u> <u>judgment</u> in the performance of duties set forth in subparagraphs (a) and (b)." <u>Id.</u> § 11040(1)(A)(3)(c)(emphasis supplied).

    A number of elements were discussed above, but the Court briefly notes that, as with the administrative exemption, individual questions predominate over common issues with respect to the professional exemption as well.  BDO correctly points out that a number of courts have found that an academic degree requirement for entry into the field can be sufficient to qualify for the professional exemption.  <u>Piscione</u> <u>v.</u> <u>Ernst</u> <u>&</u> <u>Young,</u> <u>L.L.P.</u>, 171 F.3d 527, 545 (7th Cir. 1999) (Despite Piscione's "obtain[ing] the level of associate designation [but not] obtain[ing] the level of enrolled actuary . . . [,] we agree with the district court's conclusion that Piscione's employment required some level of specialized knowledge."); <u>Medepalli</u> <u>v.</u> <u>Maximus,</u> <u>Inc.</u>, No. CIV. S-06-2774 FCD EFB,

---

[21] Nguyen incorrectly claims that "resolution of the professional exemption will turn on whether a <u>license</u> is required for the recognized profession of accounting and does not raise any individual issues." (Reply Br. 4, emphasis supplied.)  But, because the first two provisions are disjunctive, the plain language of this exemption indicates that an employee may qualify as a professional even without a license.  Hence, the resolution of this issue need not turn on whether a license is required to "practice" accounting in a strict sense.  Moreover, although the <u>Campbell</u> court focused on the common question of whether putative "class members are primarily engaged in an occupation commonly recognized as a learned or artistic profession," 253 F.R.D. 597 (internal quotation marks omitted), this Court takes a more comprehensive view, recognizing other elements of the professional exemption, such as the individual question of whether putative class members had "knowledge of an advanced type" in the field of accounting.  This individual question undermines Nguyen's argument that the applicability of the professional exemption must necessarily turn on common proof where there is evidence, as set forth above, that job skills and experience varied widely among BDO's tax associates and seniors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 07-01352-JVS (MLGx) | Date | July 6, 2009 |
|---|---|---|---|
| Title | Nam Nguyen v. BDO Seidman, LLP, et al. | | |

2008 WL 958045, at *5 (E.D. Cal. Apr. 8, 2008) (holding that a bachelor's degree plus additional work experience met the "advanced knowledge" requirements). Here, because the putative class members have a wide variety of advanced degrees, certificates, and training that they use in the performance of their tax and audit job duties, the Court agrees with BDO that individual questions predominate over common issues. (Zhong Decl. ¶ 2; Ma Decl. ¶ 2; Fond Decl. ¶¶ 3, 8; Seddigh Decl. ¶¶ 2, 4, 7; Kelfer Decl. ¶ 2; Clemente Decl. ¶ 2; Cox Decl. ¶ 3; Chu Decl. ¶ 3.)

Accordingly, Nguyen has not satisfied the predominance inquiry test. Class certification is therefore not warranted.

B. Superiority

The Court next considers whether a class action is superior to individual suits. Amchem, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

"Where damages suffered by each putative class member are [] large, this factor weighs [against] certifying a class action." See Zinser v. Accufix Research Inst., Inc. 253 F.3d 1180, 1190 (9th Cir. 2001). Here, Nguyen and the putative class he seeks to represent are well-paid employees who are seeking years worth of overtime back-pay, penalties, and attorney fees. This weighs heavily against class certification here, as the putative class members have sufficient monetary incentive to pursue their own claims. (See Opp'n Br., Ex. A.)

Moreover, this class action would be unmanageable given the predominance of the individual issues necessary to establish BDO's liability for each of the putative class members. Because the adjudication of claims on a classwide basis would amount to the adjudication of each of the claims on an individual basis, effectively, the Court finds that the class action would be unmanageable.

  Accordingly, the Court finds that class treatment is not superior to individual suits as a means to adjudicate this dispute.

IV.  Conclusion

  For the foregoing reasons, the Court DENIES Nguyen's motion for class certification.

                       0 : 00

               Initials of Preparer   nkb